# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| FIRST OPTION MORTGAGE, | )<br>) |
| Plaintiff, | ) 2:12-cv-0600-KJD-VCF<br>) |
| vs. | )<br>) **ORDER** |
| NIGEL TABBERT; PROSPECT MORTGAGE, LLC, | )<br>) |
| Defendants. | )<br>) |

The parties were before this Court on Tuesday, April 24, 2012 on a hearing on Plaintiff's Motion for Temporary Restraining Order (#1-4). Defendants filed responses in opposition (#9/11).

## FACTUAL BACKGROUND

Plaintiff FIRST OPTION MORTGAGE, a residential lending company, employed Defendant NIGEL TABBERT, from September 30, 2008, until his resignation on February 16, 2012. TABBERT was responsible for selling Plaintiff's mortgage products and services to existing and prospective customers. As a result of its advertising activities Plaintiff collected the names and contact information for prospective customers on "LeadTrac", a computer software program developed by Plaintiff. TABBERT, in his capacity as senior loan officer, had access to the information in LeadTrac. On February 9, 2009, Plaintiff and TABBERT entered into a Confidentiality and Non-Solicitation Agreement. The agreement provided that during and after TABBERT's employment with the company, he would not disseminate, publish, or disclose any

confidential information, including customer and prospective customer information.  The agreement makes it clear that it covers not only so-called "trade secrets" but all proprietary business information in any form treated as confidential or secret by the company.  By its terms, the agreement covers the period of TABBERT's employment with Plaintiff, and three years following termination of that employment.  The agreement also provides that for a period of 18 months following termination of TABBERT's employment, he will not directly or indirectly solicit, contact, call upon, communicate with or attempt to communicate with any customer of the company with whom he had had material contact during the last twelve months of his employment for the purposes of providing a residential mortgage loan.

TABBERT voluntarily resigned on February 16, 2012 and commenced his employment with DEFENDANT PROSPECT MORTGAGE, LLC.  PROSPECT is a direct competitor of Plaintiff.  Plaintiff alleges that during the weeks prior to his resignation, TABBERT began putting together and implementing a plan to solicit Plaintiff's customers and forward their confidential loan information for use by Defendant PROSPECT.  Specifically, it is alleged that TABBERT forwarded from his FIRST OPTION e-mail account to his personal home e-mail account, copies of confidential financial data for some of FIRST OPTION's customers, sent 495 e-mail addresses of FIRST OPTION contacts and took confidential loan information pertaining to FIRST OPTION customers with whom he had been working, for the purpose of converting their in-process loans to PROSPECT loans.

Following that discovery, Plaintiff communicated with TABBERT and PROSPECT, demanding that TABBERT provide all FIRST OPTION documents, information and data in his possession, custody or control, the names of all FIRST OPTION customers TABBERT had communicated with since leaving his employment and all documents, information and data relevant to the lawsuit FIRST OPTION intended to file against TABBERT.  TABBERT did not respond to the demand.  However, PROSPECT responded stating its understanding that TABBERT had not

1 commenced the loan application process with any of FIRST OPTION's customers.  FIRST OPTION
2 responded with evidence to the contrary.

3      Plaintiff seeks a temporary restraining order enjoining Defendants from soliciting, contacting
4 or providing mortgage services to specified customers or prospective customers, from disclosing or
5 using any trade secrets or confidential information of Plaintiff, from destroying evidence related to
6 this case, ordering return of all FIRST OPTION information, and ordering preservation of all
7 relevant evidence.  Plaintiff further requests delivery of all computer, computer files and electronic
8 storage devices that TABBERT used or had access to.

9      Defendant TABBERT asserts that his taking of information regarding potential clients from
10 FIRST OPTION was wholly inadvertent and that the information has not been used outside of his
11 employment with FIRST OPTION.  TABBERT further asserts that the lists of alleged "potential
12 clients" were actually dead leads, publicly disseminated, and could have been obtained from realtors
13 who already had the list.  He asserts that the twelve specific clients identified by FIRST OPTION
14 and alleged to have been solicited by him were clients that he generated or developed and who
15 wanted to go with him to PROSPECT.

16      PROSPECT asserts that it was unaware that TABBERT had pulled loans from FIRST
17 OPTION and that it had been assured by TABBERT that the customers were generated from his own
18 personal contacts and not individuals engaged in the loan process with FIRST OPTION.  Like
19 TABBERT, PROSPECT argues that the information taken by TABBERT cannot constitute "trade
20 secrets" and also argues that FIRST OPTION's delay in commencing the action is inconsistent with
21 a request for injunctive relief based on immediate and irreparable harm.

**LEGAL STANDARD**

23      The basis for injunctive relief in the federal courts is irreparable injury and the inadequacy of
24 legal remedies.  See Weinberger v. Romero-Barbell, 456 U.S. 305, 312 (1982).  In each case, the
25 Court must balance the competing claims of injury and must consider the effect on each party of the
26

1  granting or withholding of the requested relief.  All courts agree that the plaintiff must satisfy the
2  general equitable requirements by showing a significant threat of irreparable injury and that the legal
3  remedies are inadequate.  See <u>Arcamuzi v. Cont'l Airlines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987).
4  The traditional test focuses on whether the plaintiff has demonstrated a fair chance of success on the
5  merits at the minimum, a significant threat of irreparable injury, at least a minimal tip in the balance
6  of hardships, and whether any public interest favors granting the injunction.  See <u>American
7  Motorcycle Ass'n. v. Watt</u>, 714 F.2d 962, 965 (9th Cir. 1983).  An alternative test permits the
8  plaintiff to meet its burden by showing either a combination of probable success on the merits and
9  the possibility of irreparable injury or serious questions as to these matters and the balance of
10 hardships tips sharply in plaintiff's favor.  See <u>First Brands Corp. v. Fred Meyer, Inc.</u>, 809 F.2d 1378
11 (9th Cir. 1987).  These are not separate tests but the outer reaches of a single continuum.  See <u>L.A.
12 Mem'l Coliseum Comm'n v. NFL</u>, 634 F.2d 1197, 1201 (9th Cir. 1980.)

13                                                ANALYSIS

14         Based on the documents presently before the Court, there is little evidence to suggest that
15 PROSPECT agreed with TABBERT to take Plaintiff's customer lists or loans in progress.
16 PROSPECT's asserts that it questioned TABBERT on loans he had closed while at PROSPECT and
17 he gave assurances that all customers were his own and were not engaged in the loan process with
18 FIRST OPTION.  At this early stage of the proceedings, the Court is not satisfied that Plaintiff is
19 likely to prevail on its claims against PROSPECT.  PROSPECT's continued employment of
20 TABBERT does not, in and of itself, constitute a threat of irreparable harm to Plaintiff.

21         With respect to TABBERT, it appears from the evidence adduced that he did violate the
22 specific terms of his Confidentiality and Non-Solicitation Agreement.  The timing and content of his
23 e-mails belie his claim that it was done inadvertently and has not been used by him in any way.  If
24 PROSPECT is to be believed, TABBERT deceived his new employer concerning the source of his
25 loan closings.  His e-mails to himself early in the morning, throughout the day, and late at night
26

immediately prior to his departure from FIRST OPTION further belie his claim that the information he sent himself was transmitted inadvertently.  The Court finds that Plaintiff is likely to prevail on some of its claims against TABBERT and that TABBERT's possession and ability to use customer lists that were obtained by FIRST OPTION from extensive advertising, poses a threat of immediate and irreparable harm to Plaintiff.  With Defendant's access to so many hundreds of Plaintiff's potential loan customers and the loss of ripple effect of referrals to be generated from potential customers monetary damages will not adequately compensate Plaintiff for its injuries.  The public interest favors upholding contracts and avoiding the customer confusion which has allegedly resulted from TABBERT's activities.

Accordingly, a Temporary Restraining Order will issue against NIGEL TABBERT.

NIGEL TABBERT is hereby enjoined and prohibited from soliciting, (directly or indirectly) contacting, calling upon, communicating with, or providing mortgage or lending services to those individuals who were doing business with FIRST OPTION when he resigned or any individuals named on the lists he e-mailed himself from FIRST OPTION's computers, and from using any specific loan information from loans in progress during his employment with FIRST OPTION. Defendant TABBERT is further enjoined from disseminating, publishing, disclosing, using for his own benefit or the benefit of others, or divulging or conveying to others, any trade secrets of FIRST OPTION or that of third-parties, or any confidential information, including any proprietary business information related to FIRST OPTION or its customers.

Defendant TABBERT is further enjoined and prohibited from removing, altering, erasing, deleting, or destroying any evidence, or potential evidence relevant to the instant litigation.

Accordingly, IT IS ORDERED that Plaintiff's Motion for a Temporary Restraining Order (#1-4) is **GRANTED IN PART AND DENIED IN PART**;

IT IS FURTHER ORDERED that Plaintiff's Motion for a Temporary Restraining Order against PROSPECT MORTGAGE, LLC is **DENIED**;

IT IS FURTHER ORDERED that this order shall become effective upon Plaintiff posting a bond in the amount of $500.00 with the Clerk of the Court;

IT IS FURTHER ORDERED that the hearing on Plaintiff's Motion for Preliminary Injunction is set for May 14, 2012, at 9:00 a.m. in Courtroom 6D.

DATED this 30th day of April 2012.

_____
Kent J. Dawson
United States District Judge