**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FIRST OPTION MORTGAGE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NIGEL TABBERT AND PROSPECT MORTGAGE, LLC,<br><br>Defendants. | Case No. 2:12-cv-00600-KJD-VCF<br><br>**STIPULATED CONSENT JUDGMENT AND PERMANENT INJUNCTION ENJOINING AND RESTRAINING DEFENDANT NIGEL TABBERT** |

This matter originally came before the Court on Plaintiff First Option Mortgage, LLC's ("First Option") Complaint and Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction on Order Shortening Time.

WHEREUPON, the Court has considered the Complaint, the Emergency Motion for Temporary Restraining Order and Preliminary Injunction on Order Shortening Time and the Memorandum of Law in Support thereof, the sworn affidavits of Matthew Berry and Barbara Cheek and the documents submitted therewith, and other arguments and evidence presented to the Court. Further, the Court has also entered a Temporary Restraining Order against Defendant Nigel Tabbert (hereinafter "Tabbert") on April 30, 2012 attached hereto as **Exhibit 1**. After being advised that Plaintiff First Option and Defendant Tabbert have reached an agreement, stipulating and consenting to entry of this Judgment and Permanent Injunction, the Court hereby finds as follows:

## I.   CASE BACKGROUND AND COURSE OF PROCEEDINGS

A.   First Option filed its Complaint for Damages and Injunctive relief on April 6, 2012. Tabbert filed a counterclaim on July 3, 2012.

B.   In its Complaint, First Option asserted various claims for monetary and injunctive relief against its former employees Tabbert, and his subsequent employer Prospect Mortgage, LLC ("Prospect"). Prospect was removed from the case when judgment against Prospect was accepted on May 15, 2012.

C.   The Parties have advised the Court of their desire to resolve this action pursuant to, in part, the terms of this Order. The settlement of this action between the Parties is contingent upon entry by the Court of this Order.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## II.   JURISDICTION AND VENUE

This matter was removed to this Court pursuant to diversity of citizenship pursuant to 28 U.S.C. § 1332 on April 12, 2012.

## III.   CONSENT PERMANENT INJUNCTION

1.   For a period of eighteen (18) months from the date of his resignation on February 16, 2012, Defendant Tabbert is hereby enjoined and prohibited from soliciting, (directly or indirectly) contacting, calling upon, communicating with, referring or coordinating or otherwise providing mortgage or lending services to those individuals who were doing business with First Option when he resigned, as well as any individuals named on the lists he e-mailed himself from First Option's computers, and from using any specific loan information from loans in progress during his employment with First Option.

2.   Defendant Tabbert is further enjoined from disseminating, publishing, disclosing, using for his own benefit or the benefit of others, or divulging or conveying to others, any trade secrets of First Option or that of third-parties, or any confidential information, including any proprietary business information related to First Option or its customers.

2.

3.      Defendant Tabbert is further enjoined and prohibited from removing, altering, erasing, deleting, or destroying any evidence, or potential evidence relevant to the instant litigation.

4.      In addition to the above, Defendant Tabbert shall abide by the following specific terms:

(a)      Defendant Tabbert shall not use, disclose or disseminate any information he had access to at First Option, such as customer information, loan information or information otherwise described in the confidentiality obligations set forth in his Confidentiality and Non-Solicitation Agreement attached hereto as **Exhibit 2**.

(b)      In addition to the named customers of (1) Nicole Ramos, (2) Shawn and Mimi Wachter, (3) Eric Larkin and Alaina Ollio, (4) Angela Davis, (5) Terrell Lue, (6) Nasir Siddiqui and Farida Nasir, (7) Belkis Vazquez, (8) Warith and Deborah Abdulla, (9) Nathan and Ashley Buckmister, (10) Jeffrey and Rena Tucker, (11) Monica Ponce, and (12) Jade Yap, Defendant Tabbert agrees and the Court orders that for a period of 18 months from the date of his resignation on February 16, 2012, he shall not solicit, conduct business, make loans, assist in making loans, make referrals for loans or coordinating loans for or otherwise communicate with for any business purposes, any of the customers he had material contact with in the last 12 months of his employment at First Option.  The list of customers that Defendant Tabbert had such material contact with in the last 12 months of his employment with First Option is attached hereto as **Exhibit 3**.

(c)      In addition to the customers that Defendant Tabbert had material contact with as set forth in **Exhibit 3**, Defendant Tabbert agrees and the Court orders that for a period of 18 months from the date of his resignation on February 16, 2012, he shall not solicit, conduct business, make loans, assist in making loans, make referrals for loans or coordinating loans for or otherwise communicate with for any business purposes, any of the customers who had closed loans with First Option or recently worked on loans with Defendant Tabbert.  The list of customers that Defendant Tabbert had closed loans with on behalf of First Option and/or recently worked loans with is attached hereto as **Exhibit 4**.

(d)      For a period of eighteen (18) months from the date of his resignation on February 16, 2012, Defendant Tabbert shall provide commission statements for any loans closed at his current employer or any future employer with customer names as a way to track compliance with this

3.

injunction.  These commission statements will be sent to First Option's counsel of record on the first day of each month, but if the first day is a Saturday, Sunday, or holiday, the commission statement will be sent on the next day that is not a Saturday, Sunday, or holiday.  The commission statements shall be attorney-eyes only and will not be reviewed by First Option.

5.      This Order shall remain in place as a permanent injunction.

## IV.    DISMISSAL

Subject to Section III of this Order, the Parties have stipulated to the dismissal with prejudice of First Option's claims against Tabbert and Tabbert's counterclaim against First Option, including all claims and counterclaims asserted in this action, provided that the Court approves and enters this Order as submitted by the Parties.  Having approved this Order, it is hereby ORDERED that First Option's claims against Tabbert alleged in this action and Tabbert's counterclaim against First Option alleged in this action are dismissed with prejudice, subject to section VI below.

## V.    EFFECTIVE DATE

The effective date of this Order shall be the date upon which it is entered by the Court.

## VI.    RETENTION OF JURISDICTION

This Court shall retain jurisdiction over this case and the Parties for the purposes of resolving any disputes arising under this Order, entering orders modifying this Order, or effectuating or enforcing compliance with the terms of this Order.  Violations of this Order may be punishable as a contempt of Court.  The Court shall retain jurisdiction over any injunctions in this Order until such injunctions expire by their own respective terms.

## VII.    MODIFICATION

The terms of this Order may be modified only by a subsequent written agreement signed by the Parties and approved by the Court.  The Parties have, however, executed a separate Settlement Agreement and Release, which sets forth all of the material terms of their agreement to settle this action, including terms not included in this Order.

## VIII.    FINAL JUDGMENT

Upon approval and entry of this Order, this Order shall constitute the final judgment in this action regarding the claims and counterclaim between First Option and Tabbert.

1        IT IS SO ORDERED this 24th date of August, 2012.

2

3                           UNITED STATES DISTRICT COURT JUDGE

4

5 Dated: August 14, 2012                  Dated: August 14, 2012

6 Respectfully submitted,                 Respectfully submitted,

7

8 /s/ Rory J. Vohwinkel                /s/ Montgomery Y. Paek
   RORY J. VOHWINKEL, ESQ.           BRUCE C. YOUNG, ESQ.

9    VOHWINKEL & ASSOCIATES        MONTGOMERY Y. PAEK, ESQ.
                               LITTLER MENDELSON

10 Attorneys for Defendant            Attorneys for Plaintiff
   NIGEL TABBERT                    FIRST OPTION MORTGAGE, LLC

11

12

13

14

15 Firmwide:113191285.1 061265.1006

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

5.

# EXHIBIT 1

# EXHIBIT 1



# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FIRST OPTION MORTGAGE,     ) | |
|     ) | |
|         Plaintiff,     ) | 2:12-cv-0600-KJD-VCF |
|     ) | |
| vs.     ) | |
|     ) | **ORDER** |
| NIGEL TABBERT; PROSPECT     ) | |
| MORTGAGE, LLC,     ) | |
|     ) | |
|         Defendants.     ) | |

The parties were before this Court on Tuesday, April 24, 2012 on a hearing on Plaintiff's Motion for Temporary Restraining Order (#1-4). Defendants filed responses in opposition (#9/11).

## FACTUAL BACKGROUND

Plaintiff FIRST OPTION MORTGAGE, a residential lending company, employed Defendant NIGEL TABBERT, from September 30, 2008, until his resignation on February 16, 2012. TABBERT was responsible for selling Plaintiff's mortgage products and services to existing and prospective customers. As a result of its advertising activities Plaintiff collected the names and contact information for prospective customers on "LeadTrac", a computer software program developed by Plaintiff. TABBERT, in his capacity as senior loan officer, had access to the information in LeadTrac. On February 9, 2009, Plaintiff and TABBERT entered into a Confidentiality and Non-Solicitation Agreement. The agreement provided that during and after TABBERT's employment with the company, he would not disseminate, publish, or disclose any

1  confidential information, including customer and prospective customer information.  The agreement

2  makes it clear that it covers not only so-called "trade secrets" but all proprietary business information

3  in any form treated as confidential or secret by the company.  By its terms, the agreement covers the

4  period of TABBERT's employment with Plaintiff, and three years following termination of that

5  employment.  The agreement also provides that for a period of 18 months following termination of

6  TABBERT's employment, he will not directly or indirectly solicit, contact, call upon, communicate

7  with or attempt to communicate with any customer of the company with whom he had had material

8  contact during the last twelve months of his employment for the purposes of providing a residential

9  mortgage loan.

10       TABBERT voluntarily resigned on February 16, 2012 and commenced his employment with

11  DEFENDANT PROSPECT MORTGAGE, LLC.  PROSPECT is a direct competitor of Plaintiff.

12  Plaintiff alleges that during the weeks prior to his resignation, TABBERT began putting together and

13  implementing a plan to solicit Plaintiff's customers and forward their confidential loan information

14  for use by Defendant PROSPECT.  Specifically, it is alleged that TABBERT forwarded from his

15  FIRST OPTION e-mail account to his personal home e-mail account, copies of confidential financial

16  data for some of FIRST OPTION's customers, sent 495 e-mail addresses of FIRST OPTION

17  contacts and took confidential loan information pertaining to FIRST OPTION customers with whom

18  he had been working, for the purpose of converting their in-process loans to PROSPECT loans.

19       Following that discovery, Plaintiff communicated with TABBERT and PROSPECT,

20  demanding that TABBERT provide all FIRST OPTION documents, information and data in his

21  possession, custody or control, the names of all FIRST OPTION customers TABBERT had

22  communicated with since leaving his employment and all documents, information and data relevant

23  to the lawsuit FIRST OPTION intended to file against TABBERT.  TABBERT did not respond to

24  the demand.  However, PROSPECT responded stating its understanding that TABBERT had not

25

26

1   commenced the loan application process with any of FIRST OPTION's customers.  FIRST OPTION

2   responded with evidence to the contrary.

3        Plaintiff seeks a temporary restraining order enjoining Defendants from soliciting, contacting

4   or providing mortgage services to specified customers or prospective customers, from disclosing or

5   using any trade secrets or confidential information of Plaintiff, from destroying evidence related to

6   this case, ordering return of all FIRST OPTION information, and ordering preservation of all

7   relevant evidence.  Plaintiff further requests delivery of all computer, computer files and electronic

8   storage devices that TABBERT used or had access to.

9        Defendant TABBERT asserts that his taking of information regarding potential clients  from

10  FIRST OPTION was wholly inadvertent and that the information has not been used outside of his

11  employment with FIRST OPTION.  TABBERT further asserts that the lists of alleged "potential

12  clients" were actually dead leads, publicly disseminated, and could have been obtained from realtors

13  who already had the list.  He asserts that the twelve specific clients identified by FIRST OPTION

14  and alleged to have been solicited by him were clients that he generated or developed and who

15  wanted to go with him to PROSPECT.

16       PROSPECT asserts that it was unaware that TABBERT had pulled loans from FIRST

17  OPTION and that it had been assured by TABBERT that the customers were generated from his own

18  personal contacts and not individuals engaged in the loan process with FIRST OPTION.  Like

19  TABBERT, PROSPECT argues that the information taken by TABBERT cannot constitute "trade

20  secrets" and also argues that FIRST OPTION's delay in commencing the action is inconsistent with

21  a request for injunctive relief based on immediate and irreparable harm.

22                              **LEGAL STANDARD**

23       The basis for injunctive relief in the federal courts is irreparable injury and the inadequacy of

24  legal remedies.  See Weinberger v. Romero-Barbell, 456 U.S. 305, 312 (1982).  In each case, the

25  Court must balance the competing claims of injury and must consider the effect on each party of the

26

3

1   granting or withholding of the requested relief.  All courts agree that the plaintiff must satisfy the

2   general equitable requirements by showing a significant threat of irreparable injury and that the legal

3   remedies are inadequate.  See Arcamuzi v. Cont'l Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).

4   The traditional test focuses on whether the plaintiff has demonstrated a fair chance of success on the

5   merits at the minimum, a significant threat of irreparable injury, at least a minimal tip in the balance

6   of hardships, and whether any public interest favors granting the injunction.  See American

7   Motorcycle Ass'n. v. Watt, 714 F.2d 962, 965 (9th Cir. 1983).  An alternative test permits the

8   plaintiff to meet its burden by showing either a combination of probable success on the merits and

9   the possibility of irreparable injury or serious questions as to these matters and the balance of

10  hardships tips sharply in plaintiff's favor.  See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378

11  (9th Cir. 1987).  These are not separate tests but the outer reaches of a single continuum.  See L.A.

12  Mem'l Coliseum Comm'n v. NFL, 634 F.2d 1197, 1201 (9th Cir. 1980.)

13                                          ANALYSIS

14         Based on the documents presently before the Court, there is little evidence to suggest that

15  PROSPECT agreed with TABBERT to take Plaintiff's customer lists or loans in progress.

16  PROSPECT's asserts that it questioned TABBERT on loans he had closed while at PROSPECT and

17  he gave assurances that all customers were his own and were not engaged in the loan process with

18  FIRST OPTION.  At this early stage of the proceedings, the Court is not satisfied that Plaintiff is

19  likely to prevail on its claims against PROSPECT.  PROSPECT's continued employment of

20  TABBERT does not, in and of itself, constitute a threat of irreparable harm to Plaintiff.

21         With respect to TABBERT, it appears from the evidence adduced that he did violate the

22  specific terms of his Confidentiality and Non-Solicitation Agreement.  The timing and content of his

23  e-mails belie his claim that it was done inadvertently and has not been used by him in any way.  If

24  PROSPECT is to be believed, TABBERT deceived his new employer concerning the source of his

25  loan closings.  His e-mails to himself early in the morning, throughout the day, and late at night

26

4

1   immediately prior to his departure from FIRST OPTION further belie his claim that the information

2   he sent himself was transmitted inadvertently.  The Court finds that Plaintiff is likely to prevail on

3   some of its claims against TABBERT and that TABBERT's possession and ability to use customer

4   lists that were obtained by FIRST OPTION from extensive advertising, poses a threat of immediate

5   and irreparable harm to Plaintiff.  With Defendant's access to so many hundreds of Plaintiff's

6   potential loan customers and the loss of ripple effect of referrals to be generated from potential

7   customers monetary damages will not adequately compensate Plaintiff for its injuries.  The public

8   interest favors upholding contracts and avoiding the customer confusion which has allegedly resulted

9   from TABBERT's activities.

10          Accordingly, a Temporary Restraining Order will issue against NIGEL TABBERT.

11          NIGEL TABBERT is hereby enjoined and prohibited from soliciting, (directly or indirectly)

12   contacting, calling upon, communicating with, or providing mortgage or lending services to those

13   individuals who were doing business with FIRST OPTION when he resigned or any individuals

14   named on the lists he e-mailed himself from FIRST OPTION's computers, and from using any

15   specific loan information from loans in progress during his employment with FIRST OPTION.

16   Defendant TABBERT is further enjoined from disseminating, publishing, disclosing, using for his

17   own benefit or the benefit of others, or divulging or conveying to others, any trade secrets of FIRST

18   OPTION or that of third-parties, or any confidential information, including any proprietary business

19   information related to FIRST OPTION or its customers.

20          Defendant TABBERT is further enjoined and prohibited from removing, altering, erasing,

21   deleting, or destroying any evidence, or potential evidence relevant to the instant litigation.

22          Accordingly, IT IS ORDERED that Plaintiff's Motion for a Temporary Restraining Order

23   (#1-4) is **GRANTED IN PART AND DENIED IN PART**;

24          IT IS FURTHER ORDERED that Plaintiff's Motion for a Temporary Restraining Order

25   against PROSPECT MORTGAGE, LLC is **DENIED**;

26

1        IT IS FURTHER ORDERED that this order shall become effective upon Plaintiff posting a

2  bond in the amount of $500.00 with the Clerk of the Court;

3        IT IS FURTHER ORDERED that the hearing on Plaintiff's Motion for Preliminary

4  Injunction is set for May 14, 2012, at 9:00 a.m. in Courtroom 6D.

5        DATED this 30th day of April 2012.

6

7

                                       Kent J. Dawson

8                                       United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Craig, Robyn**

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Monday, April 30, 2012 12:54 PM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:12-cv-00600-KJD -VCF First Option Mortgage, LLC v. Tabbert et al Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.

### United States District Court

### District of Nevada

### Notice of Electronic Filing

The following transaction was entered on 4/30/2012 at 12:53 PM PDT and filed on 4/30/2012

**Case Name:**      First Option Mortgage, LLC v. Tabbert et al
**Case Number:**    2:12-cv-00600-KJD -VCF
**Filer:**
**Document Number:** 15

**Docket Text:**
**ORDER that Plaintiffs Motion for a Temporary Restraining Order (#1-4) is GRANTED IN PART AND DENIED IN PART. Plaintiffs Motion for a Temporary Restraining Order against PROSPECT MORTGAGE, LLC is DENIED. This order shall become effective upon Plaintiff posting a bond in the amount of $500.00 with the Clerk of the Court. The hearing on Plaintiffs Motion for Preliminary Injunction is set for May 14, 2012, at 9:00 a.m. in Courtroom 6D. Signed by Judge Kent J. Dawson on 4/30/12. (ECS, cc: finance)**

**2:12-cv-00600-KJD -VCF Notice has been electronically mailed to:**

Bruce C Young byoung@littler.com, mrodriguez@littler.com

Patricia K Lundvall lundvall@mcdonaldcarano.com, bbrown@mcdonaldcarano.com, swexler@mcdonaldcarano.com

Rory J Vohwinkel Rory@rovolaw.com

Kristen T. Gallagher kgallagher@mcdonaldcarano.com, ydekle@mcdonaldcarano.com

Montgomery Y Paek mpaek@littler.com, rcraig@littler.com

**2:12-cv-00600-KJD -VCF Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1101333072 [Date=4/30/2012] [FileNumber=5702416-0
] [a1da03501386e516d395ed03d45006606036aa2ff2d7b17acd2f8dcf3f2f2673a59
493a5575546cc136eaa3e6a55442b6052ba06ec5621da329c9d11b120fd4d]]

**Craig, Robyn**

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Monday, April 30, 2012 12:54 PM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:12-cv-00600-KJD -VCF First Option Mortgage, LLC v. Tabbert et al Order |

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** There is no charge for viewing opinions.

**United States District Court**

**District of Nevada**

**Notice of Electronic Filing**

The following transaction was entered on 4/30/2012 at 12:53 PM PDT and filed on 4/30/2012
**Case Name:**       First Option Mortgage, LLC v. Tabbert et al
**Case Number:**     2:12-cv-00600-KJD -VCF
**Filer:**
**Document Number:** 15

**Docket Text:**
**ORDER that Plaintiffs Motion for a Temporary Restraining Order (#1-4) is GRANTED IN PART AND DENIED IN PART. Plaintiffs Motion for a Temporary Restraining Order against PROSPECT MORTGAGE, LLC is DENIED. This order shall become effective upon Plaintiff posting a bond in the amount of $500.00 with the Clerk of the Court. The hearing on Plaintiffs Motion for Preliminary Injunction is set for May 14, 2012, at 9:00 a.m. in Courtroom 6D. Signed by Judge Kent J. Dawson on 4/30/12. (ECS, cc: finance)**


**2:12-cv-00600-KJD -VCF Notice has been electronically mailed to:**

Bruce C Young byoung@littler.com, mrodriguez@littler.com

Patricia K Lundvall lundvall@mcdonaldcarano.com, bbrown@mcdonaldcarano.com, swexler@mcdonaldcarano.com

Rory J Vohwinkel Rory@rovolaw.com

Kristen T. Gallagher kgallagher@mcdonaldcarano.com, ydekle@mcdonaldcarano.com

Montgomery Y Paek mpaek@littler.com, rcraig@littler.com

**2:12-cv-00600-KJD -VCF Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1101333072 [Date=4/30/2012] [FileNumber=5702416-0
] [a1da03501386e516d395ed03d45006606036aa2ff2d7b17acd2f8dcf3f2f2673a59
493a5575546cc136eaa3e6a55442b6052ba06ec5621da329c9d11b120fd4d]]

# EXHIBIT 2

# EXHIBIT 2

# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

The undersigned enter into this CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT (the "Agreement") between First Option Mortgage, LLC, including its parents, subsidiaries, affiliates, divisions, successors, assigns, and related entities (the "Company") and _____Nigel Tabbert_____ ("Employee"), effective the date executed below by Employee.

Employee acknowledges that the Company is engaged in the highly competitive business of providing residential mortgage loans to home buyers and home owners. The Company's engagement in this business has involved and continues to involve the expenditure of substantial amounts of money and the use of skills developed over a long period of time. As a result of these investments of money, skill and time, the Company has developed and will continue to develop certain valuable Trade Secrets and Confidential Information that are peculiar to the Company's business and the disclosure of which would cause the Company great and irreparable harm. The Company has also invested a great deal of time and money in developing relationships with its employees and customers.

Employee acknowledges that in rendering services to the Company, Employee will be exposed to and learn much information about the Company's business, including valuable Confidential Information and Trade Secrets, to which Employee would not have access if not for Employee's employment with the Company and which it would be unfair for Employee to disclose to others, or to use to the Company's disadvantage.

Employee acknowledges that the restrictions contained in this Agreement are necessary and reasonable to protect the Company's legitimate business interests in its Trade Secrets, valuable Confidential Information, relationships with its employees and relationships and goodwill with its customers.

Employee acknowledges that Employee's skills, education and training qualify Employee to work and obtain employment which does not violate this Agreement and that the restrictions in this Agreement have been crafted as narrowly as reasonably possible to protect the Company's legitimate business interests in its Trade Secrets, valuable Confidential Information, relationships with its employees and relationships and good will with its customers.

In consideration of the mutual promises and obligations in this Agreement, including but not limited to the Company employing or continuing to employ Employee in an at-will capacity, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the Company and Employee agree as follows:

1.   **Confidentiality**

During Employee's employment with the Company and at any time after the termination of Employee's employment with the Company for any reason, Employee will not disseminate, publish, disclose, use for Employee's own benefit or the benefit of others, or divulge or convey to others, any Trade Secrets of the Company or that of third parties

Page 1 of 5

obtained by Employee in the course of Employee's employment with the Company. "Trade Secret" means any and all information, knowledge or data in any form whatsoever, tangible or intangible, that is considered a trade secret under applicable law including, but not limited to, the Company's customer and prospective customer information. This promise of confidentiality is in addition to, and does not limit, any common law or statutory rights of the Company to prevent publication, dissemination, use or disclosure of its Trade Secrets.

Employee further agrees that during Employee's employment with the Company and for three (3) years after the termination of Employee's employment with the Company for any reason, except on behalf of the Company, Employee will not disseminate, publish, disclose, use for Employee's own benefit or the benefit of others, or divulge or convey to others, any Confidential Information of the Company. "Confidential Information" means any and all proprietary business information in any form, tangible or intangible, that is treated as confidential or secret by the Company, but does not constitute a Trade Secret, including but not limited to the Company's customer and prospective customer information. This promise of confidentiality is in addition to, and does not limit, any common law or statutory rights of the Company to prevent publication, dissemination, use or disclosure of its Confidential Information.

Upon termination of Employee's employment with the Company or at any other time at the Company's request, Employee agrees to deliver promptly to the Company all the Company's property, including, but not limited to, all customer and prospective customer information, and all other materials and all copies thereof relating in any way to the Company's business and in any way obtained by Employee during the period of Employee's employment with the Company which are in Employee's possession, custody or control. Employee further agrees not to make or retain any copies of any of the foregoing and will so represent to the Company upon termination of Employee's employment.

2.    **Non-Solicitation of Customers**

Employee agrees that during Employee's employment with the Company and for a period of eighteen (18) months after termination of Employee's employment with the Company for any reason, except on behalf of the Company, Employee will not directly or indirectly solicit, contact, call upon, communicate with or attempt to communicate with any customer of the Company for the purpose of providing a residential mortgage loan to a home buyer or home owner. This restriction shall apply only to any customer of the Company with whom Employee had Material Contact during the last twelve months of Employee's employment with the Company. "Material Contact" means interaction between Employee and the customer which takes place to further the business relationship.

3.   <u>Non-Solicitation of Employees</u>

Employee agrees that during Employee's employment with the Company and for a period of eighteen (18) months after termination of Employee's employment with the Company for any reason, Employee will not recruit, hire or attempt to recruit or hire, directly or by assisting others, any other employee of the Company with whom Employee had Material Contact during Employee's employment with the Company. "Material Contact" means interaction between Employee and the other employee of the Company which takes place to further the Company's business.

4.   <u>Proprietary Information and Inventions</u>

Employee agrees that any and all information and data originated by Employee while employed by the Company and, where applicable, by other employees or associates under Employee's direction or supervision in connection with or as a result of Employee's employment, shall be promptly disclosed to the Company, shall become the Company's property, and shall be kept confidential by Employee. Any and all such information and data, reduced to written, graphic, or other tangible form and any and all copies and reproductions thereof shall be furnished to the Company upon request and in any case shall be returned to the Company upon termination of Employee's employment with the Company.

Employee agrees that Employee will promptly disclose to the Company all inventions or discoveries made, conceived, or for the first time reduced to practice in connection with or as a result of the work and/or services Employee performs for the Company.

Employee agrees that Employee will assign the entire right, title, and interest in any such invention or inventions and any patents that may be granted thereon in any country in the world concerning such inventions to the Company. Employee further agrees that Employee will execute all documents and do all acts which may be necessary, desirable, or convenient to enable the Company, at its expense, to file and prosecute applications for patents on such inventions, and to maintain patents granted thereon.

5.   <u>Equitable Relief</u>

Employee acknowledges and agrees that any breach of the provisions of this Agreement would cause the Company irreparable injury which would not reasonably or adequately be compensated by damages in an action at law. Therefore, Employee agrees that the Company shall be entitled, in addition to any other remedies it may have under this Agreement, at law, or otherwise, to immediate injunctive and other equitable relief to prevent or curtail any breach of this Agreement by Employee. Nothing in this Agreement shall prohibit the Company from seeking or recovering any legal or monetary damages to which it may be entitled if Employee breaches this Agreement.

6.  <u>Severability</u>

Employee and the Company expressly agree that the covenants and agreements contained in this Agreement are separate, severable, and divisible, and in the event any portion or portions of such paragraphs are declared invalid or unenforceable, the validity of the remaining paragraphs of this Agreement will not be affected.  If any provision contained herein shall for any reason be held excessively broad or unreasonable as to time or interest to be protected, the court is hereby empowered and requested to construe said provision by narrowing it, so as to make it reasonable and enforceable to the extent provided under applicable law.

7.  <u>Waiver</u>

The waiver by the Company of a breach of any provision of this Agreement by Employee shall not operate or be construed as a waiver of any subsequent breach by Employee or of any of the Company's rights hereunder.

8.  <u>Entire Agreement</u>

This Agreement contains the entire agreement between the parties with respect to the subject matters contained in the Agreement.  It may not be changed orally, but only by an agreement in writing signed by Employee and the Managing Partner of the Company.  This Agreement supersedes any prior or contemporaneous discussions, negotiations, understandings, arrangements, or agreements between the Company and Employee with respect to the subject matters contained in this Agreement.

9.  <u>Future Employers</u>

Employee agrees that the Company may notify anyone employing Employee or evidencing an intention to employ Employee as to the existence and provisions of this Agreement and may provide any such person or organization a copy of this Agreement. Employee agrees that for a period of three (3) years after termination of Employee's employment with the Company for any reason, Employee will provide the Company the identity of any employer Employee goes to work for along with Employee's job title and anticipated job duties with any such employer.  Employee further agrees to provide a copy of this Agreement to anyone who employs Employee within three (3) years of the termination of Employee's employment with the Company.

10. <u>Binding Effect</u>

The covenants, terms, and provisions set forth in this Agreement shall inure to the benefit of and be enforceable by the Company and its successors, assigns, and successors-in-interest, including, without limitation, any corporation, partnership, or other entity with which the Company may be merged or by which it may be acquired.  Employee may not assign Employee's rights and obligations under this Agreement to any other party.

11. **Employment At-Will Relationship**

Employee and the Company agree that nothing in this Agreement alters the at-will nature of Employee's employment relationship with the Company and that either Employee or the Company may terminate the employment relationship at any time for any reason.

IN WITNESS WHEREOF, the Company and Employee have executed this Agreement as of the day and year first set forth above.

FIRST OPTION MORTGAGE, LLC

By: _Cynthia Caliari_
Signature

_Cynthia Caliari_
Print Name

_Accounting & Benefits_
Title

Date: _2/9/09_

EMPLOYEE:

_____
Signature

_Nigel Talbot_
Print Name

Date: _2-9-09_